UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
GREENEVILLE

TRAVIS WHITAKER )
 )
V. ) NO. 2:09-CV-251
 )
MICHAEL J. ASTRUE, )
Commissioner of Social Security )

REPORT AND RECOMMENDATION

Plaintiff has filed this action appealing the administrative denial of his application for disability insurance benefits under the Social Security Act following an adverse decision by an Administrative Law Judge ["ALJ"] which became the final decision of the Commissioner. Plaintiff and the defendant Commissioner have both filed Motions for Summary Judgment [Docs. 8 and 10]. The Motions have been referred to the United States Magistrate Judge for a report and recommendation under the standing orders of the Court and 28 U.S.C. § 636.

The sole function of this Court in making this review is to determine whether the findings of the Secretary are supported by substantial evidence in the record. *McCormick v. Secretary of Health & Human Services*, 861 F.2d 998, 1001 (6th Cir. 1988). "Substantial evidence" is defined as evidence that a reasonable mind might accept as adequate to support the challenged conclusion. *Richardson v. Perales*, 402 U.S. 389 (1971). It must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn is one of fact for the jury. *Consolo v. Federal Maritime Comm.*, 383 U.S. 607 (1966). The Court may not try the case *de novo* nor resolve conflicts in the evidence, nor decide questions of credibility. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). Even

if the reviewing court were to resolve the factual issues differently, the Secretary's decision must stand if supported by substantial evidence. *Listenbee v. Secretary of Health and Human Services*, 846 F.2d 345, 349 (6th Cir. 1988). Yet, even if supported by substantial evidence, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.,* 478 F.3d 742, 746 (6th Cir. 2007).

Plaintiff alleged disability based upon problems with his right foot due to a gunshot wound, his knees, his right shoulder, lower back, anxiety, depression, having no spleen, only a partial pancreas and kidney problems. [Tr. 76]. He had past relevant work experience as a customer service worker, a fork lift driver, a fraud investigator at a call center, an internet service representative, a sales manager for a cell phone company, and as a service specialist at a pager company. [Tr. 77]. With the exception of the job as a fork lift driver, all of these jobs required sedentary exertion, based upon the *Dictionary of Occupational Titles*. [Tr. 17].

The plaintiff was 36 years old at the time of the ALJ's decsion. He had a high school education. He alleged a disability onset date of January 12, 2005, and his insured status expired on March 31, 2009.

The medical evidence is summarized by plaintiff's counsel in his brief:

> Dr. Patrick J. Riggins treated Plaintiff from October 11, 2004 through January 13, 2005, following a left foot gunshot wound with a fracture of the navicular. Dr. Riggins advised Plaintiff there was nothing surgical to be done for the navicula, as it was comminuted into multiple pieces and there was no way to do any kind of internal fixation. Upon follow-up, Plaintiff continued to have some soreness in the foot. By January 13, 2005, x-rays were noted to show definite changes in the region of the navicular from where the gunshot blast traveled through the navicular, bullet fragments and bone dust inferior to the actual navicular, increased sclerosis throughout the region, and some collapse at the fracture site. Dr. Riggins advised Plaintiff he may develop worsening arthritis in the future and the navicular may collapse. Dr. Riggins also looked

at Plaintiff's knee and noted two previous ACL reconstructions and possible early arthritis (Tr. 105-110).

Plaintiff received treatment and pain management at Pinecrest Family Practice from November 3, 2003 through December 15 2005. Treatment was rendered for hypertension, lower back pain, decreased lumbar range of motion, bilateral knee pain and decreased range of motion, anxiety, osteoarthritis, lumbar spondylosis, lumbago, SI disease, insomnia, left ankle and foot pain, depressive disorder, right lower extremity tingling/burning/ numbness, excessive worry, left foot gunshot wound, headaches, skin rashes, hyperlipidemia, and muscle spasms. Pain management services consisted of facet/paravertebral blocks, bilateral knee joint injections, and sacroiliac joint injections (Tr. 111-187). On November 3, 2003, right foot x-rays showed degenerative changes with old appearing healed fractures of the third and fourth metatarsal bones. Knee x-rays revealed post reconstructive ACL changes in the right knee, bilateral degenerative changes, and possible loose body on the lateral aspect of the right knee (Tr. 141-141). On February 22, 2005, left ankle x-rays showed some mild degenerative changes. Left foot x-rays revealed gunshot wound through the area of the navicular with multiple shot fragments and possible aseptic necrosis underlying the navicular, as well as patchy osteoporosis probably reflecting reflex sympathetic dystrophy (Tr. 185-186).

Plaintiff underwent consultative exam by Dr. Samuel Breeding on August 2, 2007. Presenting complaints included history of gunshot wound to the left foot, with continued pain and numbness in the foot and difficulty with prolonged standing and walking; excessive sleeping; depression, anxiety, and anger; right knee instability and locking; low back pain; and right shoulder pain. Dr. Breeding reviewed the February 2005 x-rays, noted to show that the navicular bone may have some possible aseptic necrosis and possible reflex sympathetic dystrophy. On exam, Plaintiff favored his left foot while walking; he had decreased range of motion in the right shoulder; his right knee had crepitus on movement; and he reported decreased sensation in the lateral foot from the middle toe laterally. The assessment was gunshot wound to the left foot with comminuted fracture of the navicular bone and residual necrosis of the navicular bone, depression/anxiety, right knee pain with history of two ACL reconstruction surgeries, history of low back pain, decreased range of motion of the right shoulder, and history of splenectomy. Dr. Breeding opined Plaintiff can lift at least 35 pounds occasionally; he can sit for six to eight hours in an eight-hour day; he can stand for no more than one to two hours in an eight-hour day; and he would have difficulty with prolonged walking (Tr. 190-194).

On August 6, 2007, Plaintiff underwent consultative exam by Rebekah C. Ramey, M.A. Ms. Ramey noted Plaintiff's participation with formal exam of cognition appeared to be good; and, although it is likely that there are significant psychiatric and personality issues, there is some suspicion as to whether Plaintiff may have exaggerated his report of psychiatric symptoms. On mental status exam, Plaintiff's social skills were found to be impaired; his eye contact was fair; he made comments suggestive of psychotic features; his affect was flat; he appeared to be mildly anxious; and his voice tone was low and lacking in inflection. Plaintiff reported that he constantly feels

depressed and often stays in bed during the day without showering; he complained of reduced level of energy, anhedonia, and episodes of tearfulness; he reported feeling worthless and having a diminished ability to concentrate; and he reported nightmares, being easily startled, and avoiding large crowds. Ms. Ramey noted Plaintiff's affect and presentation was consistent with his self-report of symptoms of depression and anxiety. The diagnoses were major depression, recurrent, severe with psychotic features; panic disorder; rule out posttraumatic stress disorder; alcohol dependence, in sustained partial remission; cannabis abuse, in sustained full remission; and borderline and antisocial features; with a current global assessment of functioning [hereinafter "GAF"] of 49-55 (emotional functioning) and a current GAF of 61-65 (cognitive functioning). Ms. Ramey opined it is highly likely that Plaintiff's personality features present a barrier to work; his interpersonal skills are moderately impaired; and his ability to meet employment requirements is moderately impaired (Tr. 195-203).

On August 21, 2007, a non-examining state agency physician opined Plaintiff can lift/carry a maximum of 20 pounds occasionally, ten pounds frequently; can stand/walk for a total of at least two hours in an eight-hour workday; can sit for a total of about six hours in an eight-hour workday; can only occasionally climb, balance, stoop, kneel, crouch, and/or crawl; and must avoid concentrated exposure to hazards (machinery, heights, etc.) (Tr. 204-211). On May 31, 2008, a second non-examining state agency physician opined Plaintiff can lift/carry a maximum of 50 pounds occasionally, 25 pounds frequently; can stand/walk for a total of about six hours in an eight-hour workday; can sit for a total of about six hours in an eight-hour workday; is limited to frequent push/pulling (including operation of foot controls) in the left lower extremity; and can only occasionally crawl (Tr. 261-268).

On September 12, 2007, a non-examining state agency psychologist opined Plaintiff is moderately limited in his ability to interact appropriately with the general public; to accept instruction and respond appropriately to criticism from supervisors; to get along with coworkers or peers without distracting them or exhibiting behavioral extremes; and to respond appropriately to changes in the work setting (Tr. 212-227). On May 10, 2008, a non-examining state agency physician stated Plaintiff is not alleging any worsening of mental problems, no additional medical evidence was obtained, and the initial assessment was reviewed and will be affirmed (Tr. 96).

Plaintiff received treatment at Appalachian Medical Center, primarily by FNP Bobby Dr. Reynolds, from February 1, 2007 through November 21, 2007. Conditions and complaints addressed during this time include right knee pain, persistent left foot pain, anxiety disorder, depression, low back pain, osteoarthritis, chronic bronchitis, hypertension, diffuse arthralgias, degenerative joint disease, fatigue, sinusitis, and cervical pain. Anxiety and depression in Plaintiff's mannerisms and actions were consistently noted on exam. In addition, exams were consistently remarkable for decreased breath sounds, bronchial congestion, lumbar/sacral tenderness, and left foot tenderness (Tr. 228-250).

Plaintiff underwent consultative exam by Dr. Krish Purswani on April 28, 2008. Presenting complaints included bilateral knee pains, chronic left ankle and foot pain,

4

mid and low back pain radiating down to the hips, occasional numbness in the legs, right shoulder pain, anxiety, depression, and difficulty being in public. On exam, Plaintiff was obese; the left ankle was hypertrophied and enlarged compared with the right and was also slightly tender diffusely; and left ankle range of motion was decreased. The assessment was chronic bilateral knee pains, status post right ACL repair, chronic left ankle and foot pain after gunshot wound, chronic mid and low back pain, chronic right shoulder pain, status post splenectomy, anxiety and depression, obesity, and nicotine dependence. Dr. Purswani opined Plaintiff can frequently lift 40 pounds 2/3 of the time in an eight-hour day from the floor, due to chronic bilateral knee pains, chronic left ankle and foot pain, and chronic right shoulder pain; he can stand and walk with breaks for a total of seven hours in an eight-hour day, due to chronic bilateral knee pains, chronic left ankle and foot pain, and chronic right shoulder pain; and he can sit for a total of eight hours in an eight-hour day (Tr. 251-260).

Plaintiff received treatment at Holston Valley Medical Center on July 6, 2008 and July 8, 2008, due to cutaneous abscess (Tr. 294-297).

Plaintiff continued treatment by FNP Reynolds from December 18, 2007 through December 9, 2008, during which time he continued to suffer chronic bronchitis, hypertension, osteoarthritis, degenerative joint disease, right knee pain with decreased range of motion and strength, persistent foot pain, anxiety, depression, cervical pain, fatigue, low back pain with decreased range of motion and strength, diffuse arthralgias, weight gain, and obesity (Tr. 300-330). On June 13, 2008, FNP Reynolds reported treating Plaintiff since February 1, 2007, due to several conditions which cause moderate to severe pain and limit his ability to work. Specifically, FNP Reynolds noted Plaintiff has bullet fragments in his left foot and heel and has osteoarthritis, right knee pain, hypertension, and chronic bronchitis. FNP Reynolds opined Plaintiff cannot work due to the nature of his foot injury and the severity of pain associated with that injury and his comorbidities mentioned above (Tr. 298-299).

On February 26, 2009, Plaintiff underwent post-hearing consultative exam by Elizabeth A. Jones, M.A. Plaintiff's affect was moderately blunted with mood congruent; he did not smile throughout the evaluation process; mild psychomotor retardation was noted; his initiative and effectiveness appeared to be questionable; he became somewhat tearful when discussing his separation from his children; he was cooperative; and he appeared to put forth his best effort on tasks presented on the measure of intellectual functioning, with the results felt to be valid. Plaintiff reported that he doesn't get out at all; that he is paranoid of crowds and can't deal with people; that he doesn't feel like doing anything; that he stays sad and isolates; that he has difficulty sleeping; that his energy level is low; and that his anxiety sometimes gets pretty bad, causing his hands to shake. WAIS-III testing yielded a Verbal IQ score of 103, a Performance IQ score of 81, and a Full Scale IQ score of 94. Although the results of the MMPI-2 were felt to be invalid, Ms. Jones noted that Plaintiff did not appear to malinger mental health issues on the structured interview of reported symptoms, on which none of the scores fell within the probably or definitely feigning range. Ms. Jones opined Plaintiff did not appear to be malingering mental health issues, but his responses on the MMPI-2 appeared to be more reflective of a cry for help as opposed to

5

malingering. The diagnoses were depressive disorder NOS; alcohol dependence, early partial remission; and personality disorder NOS with antisocial and avoidant features; with a GAF of 55-60. Ms. Jones opined Plaintiff is moderately limited in his ability to interact appropriately with the public, supervisors, and coworkers, and mildly limited in his ability to respond appropriately to usual work situations and to changes in a routine work setting. Ms. Jones further opined Plaintiff cannot manage benefits in his own best interest (Tr. 331-340).

On March 2, 2009, Plaintiff underwent post-hearing neurological exam by Dr. Bertram Henry. Presenting complaints included depression, anxiety, history of right knee surgeries, history of left foot gunshot wound, history of right shoulder fracture, and migraines. Review of systems was positive for morning numbness in the hands, decreased right shoulder and right arm function, chronic bronchitis, difficulty breathing, and difficulty urinating. Inspection of the right knee showed that it appeared rather rounded and that the definition of the external anatomy of the knee was impaired; palpation of both knees indicated that there were slightly warmer than anticipated for normal; inspection of the left knee indicated that the external anatomy appeared to be somewhat more normal appearing than the right, but it also showed some evidence of arthritic change externally; range of motion of both knees appeared to be somewhat limited; sensory testing showed that Plaintiff indicated that when a pinwheel was applied that he would not differentiate between sharp and dull in any meaningful manner; vibratory sensation was better perceived in the left knee than the right knee; range of motion of the neck was very stiff and guarded on direct exam; and Plaintiff was significantly obese, with a body mass index of 38. The diagnoses were depression and anxiety, gunshot wound to the left foot, weight gain of significant degree, significant obesity, and chronic pain syndrome (Tr. 344-347).

Dr. Henry opined Plaintiff can never carry 51-100 pounds; can occasionally (up to 1/3) lift/carry 21-50 pounds; can frequently (1/3 to 2/3) lift/carry 11-20 pounds; can continuously (over 2/3) lift/carry up to ten pounds; can sit for a total of five hours in an eight-hour workday, one hour without interruption; can stand for a total of two hours in an eight-hour workday, one hour without interruption; can walk for a total of one hour in an eight-hour workday, one hour without interruption; can never reach overhead with his right dominant hand; can only occasional reach in all other directions with his right dominant hand; can never operate foot controls with his left foot; can never climb ladders or scaffolds; can occasionally climb stairs and ramps; can frequently stoop, kneel, crouch, and/or crawl; can never tolerate exposure to unprotected heights or operating a motor vehicle; can tolerate frequent exposure to moving mechanical parts, humidity, wetness, dust, odors, fumes, pulmonary irritants, extreme cold, extreme heat, and vibration; and can tolerate only moderate (office) noise. Dr. Henry further opined the noted limitations have been present for ten years and have lasted or will last for 12 consecutive months (Tr. 344-353).

(Doc. 9 Pgs. 2-9).

The ALJ found that the plaintiff had severe impairments of a gunshot wound to his

6

left foot, right knee pain with two ACL surgeries, osteoarthritis and low back pain. He found that the plaintiff did not have a severe mental impairment. The ALJ found that the plaintiff had the residual functional capacity to perform the full range of sedentary work. He found that the plaintiff could return to his "past relevant work as a customer service representative, fraud investigator, call center worker, service specialist, sales manager, and internet service representative." He also found that Rule 201.28 of the "Grids" would direct a conclusion of "not disabled" given plaintiff's young age, vocational history, and education. Accordingly, he found that the plaintiff was not disabled and thus not entitled to benefits. [Tr. 17-18].

Plaintiff argues that the ALJ did not take into account or evaluate "the physical and mental demands of plaintiff's past work," in reaching the conclusion that the plaintiff could return to the jobs he had performed in the past, and states that he could not perform the full range of sedentary work because of the "existence of physical and mental limitations." Plaintiff also states that the ALJ erred in ignoring the limitations found by Dr. Henry, the consultative neurologist, and by not stating why he "rejected" those limitations. Also, the plaintiff alleges that the ALJ did not properly take into account the opinion of the plaintiff's treating nurse-practitioner who opined that the plaintiff was unable to work.

The requirements of sedentary work are correctly summarized by the plaintiff as follows:

> Sedentary work involves lifting no more than ten pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. *20 CFR § 404.1567(a)*. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. *Id.* Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. *Id.* "Occasionally" means occurring from very little up to one-third of the time. *SSR 83-10.* Periods of standing or walking should generally total "no more than about two hours of an eight-hour workday." *Id.*

7

Document 9, pg. 10, footnote 1].

Plaintiff asserts that he cannot perform a full range of sedentary work due to both his mental and physical impairments. Regarding his mental problems, the ALJ relied heavily upon the consultative examination of Elizabeth A. Jones, a Senior Psychological Examiner. After a thorough examination, Ms. Jones completed a "Medical Source Statement of Ability to Do Work-Related Activities." That mental assessment form defines the ratings of severity found by the examiner, which are "none," "mild," "moderate," "marked" and "extreme." On the form, Ms. Jones found that the plaintiff's ability to understand, remember and carry out instructions were not affected by the impairment. [Tr. 338]. The form then asks the examiner to evaluate the individual's ability to interact with supervisors, co-workers, and the public, as well as to respond to changes in the routine work setting. With respect to plaintiff's abilities to interact appropriately with the public, supervisors and co-workers, Ms. Jones opined that the plaintiff had "moderate" restrictions. He had "mild" restrictions in his ability to respond appropriately to usual work situations and to changes in a routine work setting. [Tr. 339].

The form utilized by Ms. Jones, which is an "approved" form of the Social Security Administration, defines a "moderate" rating by stating that "there is more than a slight limitation in this area but the individual is still able to function satisfactorily." [Tr. 338]. This is in contrast to the next category, "marked," which states "there is serious limitation in this area. There is a substantial loss in the ability to effectively function." *Id.*

8

The word "satisfactorily" is not ambiguous. If one can function satisfactorily in interacting appropriately with the public, supervisors and co-workers, then this degree of limitation will not affect the ability to adequately perform work requiring such interaction. It may not be as pleasant a work experience for such a person as it would be for one with no limitation whatsoever, or for one with a "mild" limitation, but the ability to *perform* a job requiring such capabilities is not affected. "Satisfactorily" does not express a severe impairment. Ms. Jones' assessment provides substantial evidence for the ALJ's finding that the plaintiff does not have a severe mental impairment. If the plaintiff does not have a severe mental impairment, then his mental state would not factor into his ability to perform the full range of sedentary work.

It is true that Ms. Jones opined that the plaintiff could not manage his own finances. However, the reason for this was clearly stated in her written report: "Due to a history of alcohol dependence in addition to the possibility of benzodiazepine abuse, Mr. Whitaker may need assistance in managing his finances effectively." [Tr. 336]. An individual can no longer receive Social Security disability based upon alcohol or drug abuse. It therefore makes no sense that a side affect of such dependency, such as not being able to be entrusted with money because an individual may indulge their habit, should be a basis for finding entitlement to disability. There is thus ample evidence in the findings of Ms. Jones alone to support the ALJ's findings regarding the degree of plaintiff's mental limitations and their effect on his ability to work.

The ALJ found that the plaintiff could physically perform the full range of sedentary work, as defined hereinabove. Plaintiff's argument, basically, is that he is not capable of the

full range of sedentary but has significant limitations regarding the use of his right arm and left foot that erode that occupational base. Plaintiff asserts that this is bourne out in the medical assessment of Dr. Henry and that the ALJ ignored those aspects of Dr. Henry's report.

As an initial matter, for an individual of plaintiff's age to be limited to sedentary work in the first place indicates that such a person has significant restrictions and infirmities. By the same token, from a physical standpoint, if a person of that age still has the ability to ambulate at all and still has hands with which to perform the minimal exertional requirements of sedentary work, it would take a significant additional restriction to render them disabled. More often that not, it would seem that such an additional restriction would meet one of the listings and prevent the analysis from going past the third step of the sequential evaluation process. Plaintiff, admittedly, does not meet or equal a listing.

He argues that Dr. Henry documented such a restriction. There can be no dispute that Dr. Henry clearly found that the plaintiff met the lifting requirements of sedentary work, being able to lift and carry up to 10 pounds "continuously." [Tr. 348]. Also, he opined that the plaintiff could sit for 5 hours, stand for 2 hours and walk for 1 hour, doing none of these for more than one uninterrupted hour at a time. [Tr. 349]. Here again, this meets the requirements of the full range of sedentary work. The additional limitations found by Dr. Henry beyond the weight to be lifted and plaintiff's ability to stand, walk and sit were that he could never reach overhead with his right hand, could never operate foot controls with his left foot, could never climb ladders or scaffolds, could occasionally climb stairs and ramps, could never work at unprotected heights and could never operate a motor vehicle. [Tr. 350-

352].

The past relevant jobs which the ALJ found that the plaintiff could perform were sedentary jobs according to the Dictionary of Occupational Titles. Common sense would indicate that none of them would be precluded by an inability to reach overhead with one hand or to climb a ladder or to operate a foot control with the left foot. The "sedentary" nature of these jobs subsumes any argument that the plaintiff cannot meet the standing, walking and sitting requirements. Both Dr. Henry, Dr. Breeding [Tr. 190-194], and the state agency physicians opined that he could do enough of these for a long enough period to meet the requirements of sedentary work.

The Court is not saying that the plaintiff does not have severe limitations. Neither did the ALJ. But it appears that there was substantial evidence to support the ALJ's finding that the plaintiff could perform the full range of sedentary work.

With respect to the opinion by the plaintiff's nurse-practitioner that he could not work, the ALJ adequately explained in his hearing decision why he gave it little weight. [Tr. 16].

For the foregoing reasons, it is RECOMMENDED that the plaintiff's Motion for Summary Judgment [Doc. 8] be DENIED, and that the defendant Commissioner's Motion for Summary Judgment [Doc. 10] be GRANTED.[1]

Respectfully Submitted:

  s/ Dennis H. Inman  

---

[1] Any objections to this report and recommendation must be filed within fourteen (l4) days of its service or further appeal will be waived. Thomas v. Arn, 474 U.S. 140 (1985); United States v. Walters, 638 F.2d 947-950 (6th Cir. 198l); 28 U.S.C. § 636(b)(1)(B) and (C).

United States Magistrate Judge